STATE of Wisconsin, Plaintiff-Appellant,

v.

Robert J. COMSTOCK, Defendant-Respondent-
Petitioner.

Supreme Court

*No. 90–2080–CR. Oral argument February 24, 1992.—Decided
June 17, 1992.*

(Also reported in 485 N.W.2d 354.)

917

For the defendant-respondent-petitioner there were briefs by *David G. Ahrens* and *Jury & Ahrens,* Appleton and oral argument by *David G. Ahrens.*

For the plaintiff-appellant the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *State v. Comstock,* 163 Wis. 2d 218, 471 N.W.2d 596 (Ct. App. 1991), reversing an order of the Outagamie county circuit court, John P. Hoffmann, Circuit Judge. The issue on review is whether the double jeopardy clause of the United States Constitution was violated when a circuit court (Judge Michael Gage in this case), upon considering a presentence investigation, vacated *sua sponte*

the previously accepted no contest pleas and reinstated the felony charges contained in the original information.[1]

For the reasons set forth, we hold that jeopardy attached in this case upon the circuit court's acceptance of the defendant's plea of no contest to the amended information. We further hold that the circuit court (Judge Michael Gage) violated federal constitutional protections when, under the circumstances of this case, it *sua sponte* vacated the defendant's pleas and reinstated the original charges.[2]

Accordingly, we reverse the decision of the court of appeals. We agree with that part of the circuit court's (Judge John P. Hoffmann's) order dismissing the four felony charges, and we disagree with that part of the circuit court's (John P. Hoffmann's) order dismissing the two misdemeanor charges and the no contest pleas. We remand the cause to the circuit court for reinstatement of the amended information alleging two misdemeanor charges and the pleas of no contest and for sentencing proceedings.

Furthermore, as both the state and the defendant urge,[3] we exercise our superintending authority,[4] and

---

[1]The defendant in this case pleaded no contest, and the circuit court accepted the plea. The parties treat a no contest plea and a guilty plea the same for purposes of the issues in this case, and so does this opinion.

[2]As the court of appeals noted, this case involves an issue of law, requiring the application of constitutional principles to undisputed facts.

[3]The state contends that the defendant's constitutional protection against double jeopardy was not violated. Nevertheless the state urges this court to exercise its superintending authority and declare the following rule for future cases: Circuit courts shall not hereafter vacate a validly accepted guilty or no contest plea on

direct each circuit court to refrain from *sua sponte* vacating a guilty or no contest plea after the circuit court has validly accepted the plea by assuring itself of the voluntariness of the plea and the factual basis for the charges unless the circuit court finds that there was fraud in procuring the plea or that a party intentionally withheld from the circuit court material information which would have induced the circuit court not to accept the plea.[5] As the state's brief explains, this holding avoids one of the unfortunate unintended effects of the court of appeals' decision in this case permitting the circuit court's *sua sponte* vacating of the no contest plea, namely that an accused will be reluctant to speak truthfully in the presentence investigation for fear that a disclosure may cause the circuit court to vacate the plea.

We first set forth the facts and background of the case. Next we discuss felony counts 1 and 2 which were reduced to misdemeanor counts. Lastly we discuss felony counts 3 and 4 which were dismissed.

their own motion except where there has been fraud in procuring the plea or where a party has intentionally withheld from the circuit court material information which would have induced the circuit court not to accept the plea.

The defendant contends that his constitutional guarantees were violated and urges this court to exercise its superintending authority as the state requests but urges that the court's order be applicable to his case.

[4] "The supreme court shall have superintending and administrative authority over all courts." Article VII, sec. 1(1), Wis. Const.

[5]Neither the state nor the circuit court asserts that this case involves fraud or the intentional withholding of material information.

## I.

The relevant facts of this case for purposes of this review are undisputed. Before we describe the relevant facts, however, we note that the dissent recites as fact a detailed description of the sexual relations between the defendant and the victim. Neither of the party's briefs nor the transcripts of the circuit court's hearings nor the court of appeals' opinion gives an account of the asserted relationship, and this opinion does not, because this narrative is not relevant to the constitutional issue presented in the case at bar.

Furthermore, the dissent admits that it recites numerous facts drawn from the presentence investigation report. Dissenting opinion at 956. We disapprove of this practice. The legislature has provided that the presentence investigation report be disclosed to a limited number of people. The circuit court is to use the presentence investigation for sentencing purposes. After sentencing, the presentence report shall be confidential and shall not be made available except as provided by court order and by statute. The report was sealed when it arrived in this court; the report was opened in this court and was available to members of the court. The presentence report will be resealed when this decision is released and the presentence report will not be part of the public record. Section 972.15(4), Stats. 1989-90, reads: "After sentencing, unless otherwise authorized under sub. (5) or ordered by the court, the presentence investigation report shall be confidential and shall not be made available to any person except upon specific authorization of the court."[6] The legislative comments accompanying sec. 972.15 explain that "presentence

---

[6]Section 972.15, Stats. 1989-90, reads in full:

923

reports should not be public records. The information in such reports is often unverified and would in many cases,

**972.15 Presentence investigation. (1)** After a conviction the court may order a presentence investigation.

**(2)** When a presentence investigation report has been received the judge shall disclose the contents of the report to the defendant's attorney and to the district attorney prior to sentencing. When the defendant is not represented by an attorney, the contents shall be disclosed to the defendant.

**(2m)** The person preparing the presentence investigation report shall attempt to contact the victim to determine the economic, physical and psychological effect of the crime on the victim. The person preparing the report may ask any appropriate person for information. This subsection does not preclude the person who prepares the report from including any information for the court concerning the impact of a crime on the victim.

**(2s)** If the defendant is under 21 years of age, the person preparing the presentence report shall attempt to determine whether the defendant has been adjudged delinquent under ch. 48 or has had a similar adjudication in any other state in the 3 years immediately preceding the date the criminal complaint relating to the present offense was issued and, if so, shall include that information in the report.

**(3)** The judge may conceal the identity of any person who provided information in the presentence investigation report.

**(4)** After sentencing, unless otherwise authorized under sub. (5) or ordered by the court, the presentence investigation report shall be confidential and shall not be made available to any person except upon specific authorization of the court.

**(5)** The department may use the presentence investigation report for correctional programming, parole consideration or care and treatment of any person sentenced to imprisonment, placed on probation, released on parole or committed to the department under ch. 51 or 971 or any other person in the custody of the department or for research purposes. The department may make the report available to other agencies or persons to use for purposes related to correctional programming, parole consideration, care and treatment, or research. Any use of the report under this subsection is subject to the following conditions:

(a) If a report is used or made available to use for research purposes and the research involves personal contact with subjects, the department, agency or person conducting the research may use a

924

even if true, cause irreparable harm to informants or the defendant."[7] The Commentary to the ABA Sentencing Alternatives and Procedure Standards, on which the legislature modeled sec. 972.15, reinforces this position: "No legitimate interests are served by public disclosure. The incentive both for the offender and for sources close to the offender to cooperate candidly in the presentence investigation might be lessened if they knew that their statements could become part of the public record."[8]

Now the relevant undisputed facts. In September 1989, the defendant, Robert J. Comstock, was charged in a criminal complaint with two counts of second degree sexual assault, a Class C felony, for having sexual contact and sexual intercourse with a person over the age of 12 and under the age of 16 years. Section 940.225(2)(e), Stats. 1983-84.[9] The charges were based on incidents which occurred on January 6, 1984, while the victim was visiting the defendant's home. On January 6, 1984, the victim was about two months shy of her 16th birthday, and the defendant was about 40 years old.

---

subject only with the written consent of the subject or the subject's authorized representative.

(b) The department or the agency or person to whom the report is made available shall not disclose the name or any other identifying characteristics of the subject, except for disclosure to appropriate staff members or employes of the department, agency or person as necessary for purposes related to correctional programming, parole consideration, care and treatment, or research.

[7]Section 63, ch. 255, Laws of 1969 (reprinted in West's Wis. Stat. Ann., sec. 972.15, at 85).

[8]American Bar Association, *Standards for Criminal Justice* sec. 18-5.3, at 18.362 (2nd ed. 1980).

[9]The penalty for each Class C Felony is a fine not to exceed $10,000.00 or imprisonment not to exceed 10 years, or both. Section 939.50(3)(c), Stats. 1983-84.

The preliminary hearing was held on October 6, 1989, before Outagamie Circuit Court Judge Michael W. Gage, with the victim as the only witness. The victim testified about the defendant's conduct on the evening of January 6, 1984. Immediately following the preliminary hearing, the assistant district attorney filed an information charging the defendant with four counts of second degree sexual assault, all based on the incidents which occurred on January 6, 1984.

On October 26, 1989, the assistant district attorney advised the defendant and the circuit court in a written response to the defendant's demand for discovery and inspection that the state was unaware of any criminal record for the defendant.

On November 13, 1989, the assistant district attorney moved the circuit court for permission to introduce at trial evidence of "other crimes or prior bad acts" based on other alleged sexual contact between the defendant and the victim and the victim's younger sister from January through April 1984. The circuit court was thus alerted to the state's assertion that it had evidence of other incidents of sexual misconduct involving the defendant and the victim and a younger member of her family.

The state and the defendant reached a plea agreement which the assistant district attorney set forth on the record at a court hearing on December 11, 1989. The prosecution agreed to amend counts 1 and 2 to reduce them from second degree sexual assault (felonies) to fourth degree sexual assault (misdemeanors) and to dismiss counts three and four of the information.[10] The

---

[10]The amended charges fall under sec. 940.225(3m), Stats. 1983-84, which provides as follows: "Whoever has sexual contact with a person without the consent of that person is guilty of a Class A misdemeanor."

defendant agreed to plead no contest to the two counts of fourth degree sexual assault. In addition, the prosecution agreed to recommend three years probation with a maximum of 75 days in jail as a condition of probation. The prosecutor further agreed on the record not to bring any other charges for any other incidents between the defendant and the victim or the victim's sister.

Circuit courts in this state may not involve themselves in the plea agreement process and are not bound by any plea agreement between a prosecutor and a defendant. Before permitting a prosecutor to amend charges to allege a less serious offense and before accepting a defendant's guilty or no contest plea to the amended charges, the circuit court must satisfy itself that the amended charges fit the crime and that the amendments are in the public interest. A circuit court may, as this court has written, ask sufficient questions, including the prosecutor's reasons for entering the plea agreement, to satisfy itself of the wisdom of accepting the plea to reduced charges. This is law of longstanding in this state.[11]

---

A Class A misdemeanor is punishable by a maximum fine of $10,000.00 or nine months in jail or both. Section 939.51(3)(a), Stats. 1983–84.

[11]Section 971.08(1)(b), Stats. 1989–90, requires a circuit court to "[m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged." The trial judge must "personally determine 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.' " *Ernst v. State,* 43 Wis. 2d 661, 674, 170 N.W.2d 713 (1969) (citations omitted), *overruled in part on other grounds, State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

A circuit court has the power to accept or reject a plea agreement reducing or amending charges; it should consider the public

At the December 11 hearing, in compliance with sec. 971.08, Stats. 1989–90, and the procedure this court has set forth for a circuit court to accept guilty pleas and plea agreements, the circuit court advised the defendant that the court need not accept the plea agreement and was not bound by the plea agreement; that if the court reduced the charges pursuant to the plea agreement, it need not adhere to the prosecutor's recommended sentence; and that the circuit court could impose a sentence up to the maximum amount authorized by statute for the two misdemeanors, even if it accepted the plea agreement.

After advising the defendant of the legal consequences of a plea agreement, Judge Gage stated his understanding of the plea agreement on the record. Then the judge engaged the defendant personally in a long colloquy, determining that the defendant understood the nature of the original and amended charges, understood

---

interest in making its decision about the plea agreement and should make a complete record of the plea agreement. The court must personally advise the defendant that the agreement is in no way binding on the court. *State ex rel. White v. Gray,* 57 Wis. 2d 17, 29–30, 203 N.W.2d 638 (1973), *after remand,* 58 Wis. 2d 285, 289, 206 N.W.2d 163 (1973); *State v. Roubik,* 137 Wis. 2d 301, 305–07, 404 N.W.2d 105 (Ct. App. 1987).

"In cases in which the prosecutor has moved to reduce the charge in the complaint it is also proper, although not mandatory, for the court to ascertain why the charge was reduced. After ascertaining this information and assuring itself of the voluntariness of the plea, the factual basis for the charge, and the propriety of any proposed reduction of the charge, the court should then determine whether or not to accept the plea." *Salters v. State,* 52 Wis. 2d 708, 715, 191 N.W.2d 19 (1971).

See also *Rahhal v. State,* 52 Wis. 2d 144, 150, 187 N.W.2d 800 (1971); *State v. McQuay,* 154 Wis. 2d 116, 128, 452 N.W.2d 377 (1990).

the maximum penalties, and was voluntarily entering the plea. Based upon the plea agreement and the record made at the preliminary hearing, the circuit court allowed the amendment of two felony charges (counts 1 and 2) to misdemeanor charges, dismissed two felony charges (counts 3 and 4), found a factual basis for the plea, and accepted the defendant's plea of no contest to the two misdemeanor counts.

The circuit court thus accepted the no contest pleas and reduced and dismissed the felony charges only after a lengthy preliminary hearing in which the victim set forth all facts relating to the original four felony counts for four sexual contacts on January 6, 1984, and after the circuit court had been alerted to the state's allegations that the defendant had engaged in other instances of sexual misconduct with the victim and the victim's sister.

After accepting the no contest pleas, the circuit court then stated that it was ordering a presentence investigation "as a formal matter" and set the date for the sentencing hearing. After accepting a guilty plea, the circuit court will ordinarily find the accused guilty and order that a judgment of conviction be entered. I Wisconsin Judicial Benchbooks—Criminal and Traffic, Arraignment/Pleas, CR-4-8 (1987).[12] In this case, the circuit court did not expressly find the defendant guilty and did not expressly order that a judgment of conviction be entered. Nevertheless the circuit court in this case must be deemed to have found the defendant guilty of the two misdemeanors and to have ordered that a

---

[12]Section 972.13(1), Stats. 1989-90, provides that a "judgment of conviction shall be entered upon a verdict of guilty by the jury, or a finding of guilty by the court in cases where a jury is waived, or a plea of guilty or no contest."

judgment of conviction be entered because the circuit court ordered a presentence investigation. Section 972.15(1), Stats. 1989–90, expressly requires a conviction before the circuit court may order a presentence investigation.[13]

The victim was present in court at the December 11 hearing at which the circuit court accepted the defendant's pleas of no contest. The victim addressed the

[13]Section 972.15(1), Stats. 1989–90, states that "*after conviction* the court may order a presentence investigation." (Emphasis added.)

Section 3640, 1991 Wis. Act 39, amended sec. 972.15(1) to limit presentence investigations to convictions for a felony.

In *Rosado v. State,* 70 Wis. 2d 280, 234 N.W.2d 69 (1975), the circuit court ordered a presentence investigation before it accepted a guilty plea pursuant to a plea agreement. Under the plea agreement, the accused agreed to plead guilty to the charge, and the prosecution agreed to recommend probation. The presentence investigation revealed that the accused had other sexual contacts with the victim, influencing the investigator to recommend incarceration. The circuit court sentenced the accused to prison. The accused moved to withdraw his plea; the motion was denied. The supreme court held that the circuit court's ordering a presentence investigation before accepting the guilty plea was error. Because the circuit court had determined that the accused had voluntarily and intelligently entered the plea before ordering the presentence investigation and because the circuit court did not vacate the accused's guilty plea, the supreme court held that the circuit court's violation of the statute requiring a conviction before ordering a presentence investigation was harmless error which in no way prejudiced the accused's right to a fair sentencing procedure.

We need not re-examine *Rosado.* In the case at bar, unlike in *Rosado,* the circuit court vacated the guilty plea on the basis of the presentence investigation. This case, unlike *Rosado,* thus involves the effect of examining a presentence investigation to vacate a guilty plea.

circuit court at the end of the hearing to discuss setting the date for sentencing at a time when she could be in the courtroom.[14]

The circuit court held the sentencing hearing on January 19, 1990. The presentence investigation report, which included an interview with the defendant and the victim,[15] was available to the court and the parties at that time. The report concluded that, because of the plea agreement, the circuit court could not sentence this defendant with appropriate severity. It recommended that the circuit court reject the plea agreement if that option were available.

Prior to the sentencing hearing the circuit court had also received communications from the victim and her family and friends. These communications objected to the plea agreement and advised the circuit court of the significant psychological and economic harm the victim suffered because of her long continuing sexual relationship with the defendant. The circuit court also received letters favorable to the defendant.

---

[14]Section 950.04(1), Stats. 1989-90, part of chapter 950, entitled "Rights of Victims and Witnesses of Crime," grants a victim the right to be informed by local law enforcement agencies and the district attorney of the final disposition of the case. The statute is silent about the need to advise the victim of a plea agreement.

Section 950.04(2m), Stats. 1989-90, provides that a victim has the right to have the court provided with information pertaining to the economic, physical, and psychological effect of the crime upon the victim of a felony and have the information considered by the court.

[15]Section 972.15(2m), Stats. 1989-90, provides that "the person preparing the presentence investigation shall attempt to contact the victim to determine the economic, physical and psychological effect of the crime upon the victim."

Two other communications were also before the circuit court. On January 17, 1990, the victim's psychologist sent a letter to the probation officer. This letter advised the officer of the importance to the victim of holding the defendant accountable for the harm he inflicted upon her and agreed with the recommendation that the circuit court reject the plea agreement. On January 17, 1990, the Outagamie County District Attorney sent a letter to the circuit court. This letter explained that he had reviewed the file upon the victim's complaint. The district attorney concluded that the victim was dissatisfied with the plea agreement; that the assistant district attorney believed he had valid reasons for entering into the agreement; and that the district attorney would probably have handled the matter differently had he been in charge of the case. The district attorney stated, however, that he was not seeking to vacate the plea agreement. The district attorney also reported that he had advised the victim that she could express her objections about the plea agreement to the circuit court, including her concerns about her need to receive restitution to pay her expenses for counselling.

At the sentencing hearing, the circuit court expressed its concern about how the case had been handled and *sua sponte* raised the question whether the plea agreement could be voided. The circuit court asked that counsel advise it of their positions on the circuit court's power to "reinstate [the original charges] in the interest of justice or otherwise." The circuit court adjourned the sentencing hearing without taking testimony.

On January 23, 1990, the defendant moved for "specific performance" of the plea agreement, alleging that both the prosecutor and the circuit court had breached the agreement.

At a hearing on January 24, 1990, the circuit court concluded, as a matter of law, that despite finding a factual basis for the plea and despite accepting the no contest pleas to reduced charges, it could vacate the plea agreement in the public interest.

The circuit court then explored the pros and cons of accepting the plea agreement.

The circuit court perceived the following factors as supporting its initial acceptance of the plea agreement: First, the defendant, age 45 at the time of the hearing, had no criminal record. Second, according to the victim's testimony at the preliminary hearing, the victim was six weeks short of her 16th birthday when the four felony offenses allegedly occurred. Regardless of the victim's age, if the state could prove lack of consent (consent being an issue in dispute), the contact would be a misdemeanor under the plea agreement. See also sec. 944.15(2), Stats. 1983–84 (Class A Misdemeanor for sexual intercourse with a minor who is 16–18). Third, sexual assault is a traumatic experience, with emotional and psychological effects on the victim. There was significant concern for the victim's testifying and reliving the experience.[16] Fourth, the offense took place almost six years before the charges were brought, and memories fade. Other than the victim's testimony, the state had not revealed any proof that the offenses took place or the date of the incidents. Finally, implicit in the parties' and circuit court's decision to accept the plea agreement was the knowledge that the plea agreement would save the expense and uncertainty of a trial, while still accom-

---

[16] "While courts continue to recognize the strong public policy in favor of compelling testimony, the criminal justice system has in recent years begun to take cognizance of another public policy which has been gaining acceptance: assisting victims and witnesses in the criminal justice system." *State v. Gilbert*, 109 Wis. 2d 501, 513, 326 N.W.2d 744 (1982).

plishing the state's goals of convicting the defendant of a serious crime and supervising the defendant through probation.

Relying heavily upon the expressed wishes of the victim and her supporters and the materials submitted after the acceptance of the pleas and the conviction and before the sentencing, the circuit court vacated the pleas for the following reasons: First, the presentence report recommended punishments not available under the reduced charges. Second, the victim was willing to testify at trial and participate fully in the case. Third, the presentence report and supplementary material revealed the extent of the emotional and psychological damage the defendant's conduct caused the victim.

The circuit court, *sua sponte,* vacated the defendant's no contest pleas to the two misdemeanor charges and reinstated the four felony counts contained in the original information. Judge Gage then recused himself from further participation in the matter. The case was assigned to Waupaca County Circuit Court Judge John P. Hoffmann.[17]

On March 6, 1990, the defendant filed a motion to dismiss the reinstated information on double jeopardy grounds. Judge Hoffmann granted that motion, dismissing the four felony counts with prejudice. The circuit court (Judge Hoffmann) further ordered, without explanation, that the no contest pleas to the two misdemeanor counts which Judge Gage had vacated on January 24, 1990, remain vacated. The state appealed from Judge Hoffmann's order to the court of appeals.

---

[17]According to the record, Chief Judge Harold Froelich asked that the case be assigned to a Circuit Judge from outside Outagamie County because the victim's father was a county official.

The court of appeals reversed Judge Hoffmann's order dismissing the reinstated information. With respect to the two charges amended from felonies to misdemeanors (counts 1 and 2), the court of appeals concluded that jeopardy attached upon the circuit court's acceptance of the no contest pleas, but that the vacation of the pleas and reinstatement of the original charges did not constitute a second jeopardy. Relying on its understanding of *Salters v. State,* 52 Wis. 2d 708, 191 N.W.2d 9 (1971), the court of appeals concluded that the same jeopardy continued until a valid judgment of conviction. Although sec. 972.15, Stats. 1989–90, authorizes a circuit court to order a presentence investigation only after conviction, the court of appeals apparently concluded that, because a presentence investigation report may furnish relevant information, the circuit court in this case should have reviewed the presentence report before making a final decision about accepting the plea agreement.[18]

With respect to the two dismissed felony charges (counts 3 and 4), the court of appeals concluded that jeopardy had never attached.

---

[18]*Salters* and other cases upon which the parties and the court of appeals relied are distinguishable from this case. In this case, unlike the cited cases, the circuit court's acceptance of the pleas to reduced charges was part of a plea agreement; the circuit court accepted the no contest pleas after assuring itself of the voluntariness of the pleas, the factual basis for the charges, and the propriety of the proposed dismissal and reduction of the charges; the circuit court convicted the defendant and ordered a presentence investigation in which the defendant cooperated; neither party claimed that the circuit court's acceptance of the pleas was erroneous; the circuit court never changed its mind about the validity of the pleas.

## II.

Before examining the validity of reinstating the four felony charges, we briefly review double jeopardy law.

The double jeopardy clause of the Fifth Amendment provides as follows: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . .." This federal constitutional guarantee is enforceable against the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794 (1969).[19]

The decisions interpreting double jeopardy are complex and difficult to understand and apply, often turning on the factual context. The United States Supreme Court has criticized its own decisions on double jeopardy, commenting that "they can hardly be characterized as models of consistency and clarity." *Burks v. United States,* 437 U.S. 1, 9 (1978).[20]

According to the Court's analysis, the double jeopardy clause offers three protections: (1) against a second prosecution for the same offense after acquittal, (2) against a second prosecution for the same offense after conviction, and (3) against multiple punishments for the

---

[19]Article I, sec. 8(1), of the Wisconsin constitution provides: "[N]o person for the same offense may be put twice in jeopardy of punishment . . .."

[20] "Despite its roots in antiquity, however, this guarantee [against double jeopardy] seems both one of the least understood and, in recent years, one of the most frequently litigated provisions of the Bill of Rights. This Court has done little to alleviate the confusion, and our opinions, including ones authored by me, are replete with *mea culpa's* occasioned by shifts in assumptions and emphasis." *Whalen v. United States,* 445 U.S. 684, 699 (1980) (Rehnquist, J., dissenting) (citations omitted).

936

same offense. Underlying these protections are the principles of fairness and finality. The bar to retrial after conviction or acquittal ensures that the state will not make repeated attempts to convict an individual, thereby exposing the accused to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence. The protection against cumulative punishments is designed to ensure that a court's sentencing discretion is confined to the limits established by the legislature. *Ohio v. Johnson,* 467 U.S. 493, 498–499 (1984); *Arizona v. Washington,* 434 U.S. 497, 503–05 (1978); *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 568–70 (1977); *United States v. Wilson,* 420 U.S. 332, 342–44 (1975).

The prohibition against double jeopardy is not triggered until "jeopardy attaches" in the proceedings. Jeopardy means exposure to the risk of a determination of guilt or innocence. 3 W. LaFave and J. Israel, *Criminal Procedure* sec. 24.1(c) at 63 (1984). Thus sec. 972.07, Stats. 1989–90, provides that jeopardy attaches (1) when a witness is sworn in a trial to the court without a jury, and (2) when the selection of the jury has been completed and the jury sworn in a jury trial.

### III.

We now turn to the issue of the two felony counts (counts 1 and 2) that were amended to two misdemeanor counts to which the defendant pleaded guilty. The state, the defendant, and the court of appeals agree that this court has held that jeopardy attaches when a circuit

court accepts an accused's plea of guilty.[21] See *State v. Waldman,* 57 Wis. 2d 234, 237, 203 N.W.2d 691 (1973); *Salters v. State,* 52 Wis. 2d 708, 714, 191 N.W.2d 19 (1971); *Hawkins v. State,* 30 Wis. 2d 264, 267, 140 N.W.2d 226 (1966); and *Belter v. State,* 178 Wis. 57, 62, 189 N.W. 270 (1922). In this case the circuit court accepted the defendant's plea of no contest. We therefore conclude, on the basis of our prior cases, that jeopardy attached.

The acceptance of a guilty or no contest plea is a proceeding beyond the preliminary steps listed in sec. 972.07 and exposes an accused to the risk of a determination of guilt. As we stated previously, after accepting a guilty plea, the circuit court will ordinarily find the accused guilty and order that a judgment of conviction be entered.

In this case the circuit court did not expressly find the defendant guilty and did not expressly order that a judgment of conviction be entered. Nevertheless, as we explained previously, the circuit court must be deemed to have made this finding and order, because the circuit court ordered a presentence investigation. Section 972.15(1), Stats. 1989–90, expressly requires a conviction before the circuit court may order a presentence investigation.

Our conclusion that jeopardy attached upon the circuit court's acceptance of the guilty pleas is supported by *Belter v. State,* 178 Wis. 57, 189 N.W. 270 (1922). *Belter* appears to be the original Wisconsin case adopting the rule that jeopardy attaches upon acceptance of a guilty plea and that double jeopardy prevents a court from

---

[21]The proper procedure for the acceptance of a plea by the court is set forth in *Salters v. State,* 52 Wis. 2d 708, 191 N.W.2d 19 (1971). Neither party contends that the circuit court erred in the procedure it used in accepting the defendant's no contest plea.

vacating a guilty plea on its own motion if it subjects the accused to charges of a greater offense.

In *Belter* the accused pleaded guilty in the lower branch of municipal court to the misdemeanor of possessing muskrat and mink skins and was sent to jail to await sentencing. At the time set for sentencing, the lower branch of the municipal court certified the case to the upper branch of the municipal court where an information was filed charging the accused with the same crime, but as a repeat offender because of a prior conviction for forgery. The accused was sentenced to 18 months when the maximum sentence for the possession of skins alone was six months.

The accused argued that the proceeding in the lower branch placed him in jeopardy and that the proceeding in the upper branch therefore violated his constitutional protection against double jeopardy. The supreme court held that the acceptance of the accused's plea of guilty in the lower branch subjected the accused forthwith to the statutory penalty and that the municipal court's jurisdiction to try the accused for the offense had become a finality. The municipal court could not on motion of the prosecutor or on the court's own motion erase the first proceeding. The supreme court concluded that the accepted plea of guilty was the same as a verdict of guilty by a jury. Having thus been once placed in jeopardy in the lower branch proceeding, the accused would be subject to a new and greater penalty in the upper branch proceeding in violation of the accused's constitutional rights. The supreme court summarized its holding as follows:

> His plea of guilty, accepted as it was by the court, was a waiver of any trial and then and there subjected defendant forthwith to the statutory penalty. The exercise of the jurisdiction to try him for such an

offense had then become a finality, and it could not be, either on motion by the prosecutor or by the court *on its own motion,* wiped out and the other jurisdiction to bind over be substituted . . .. The state in effect elected to have a trial as to the charged offense and the court assumed to try and determine for such offense, and such election and choice are binding, and the magistrate, having fully exercised the one jurisdiction, must forego the other. *Belter,* 178 Wis. at 62 (emphasis added).[22]

Consistent with *Belter,* several federal circuit courts of appeal have recently concluded that jeopardy attaches upon the acceptance of a guilty plea. *United States v. Britt,* 917 F.2d 353, 356 n.3 (8th Cir. 1991); *United States v. Baggett,* 901 F.2d 1546, 1548 (11th Cir.), *cert. denied,* 111 S. Ct. 168 (1990); *United States v. Kim,* 884 F.2d 189, 191 (5th Cir. 1989); *United States v. Cambindo Valencia,* 609 F.2d 603, 637 (2nd Cir. 1979), *cert. denied sub nom. Prado v. United States,* 446 U.S. 940 (1980).

The state asks this court to overturn our earlier decisions and adopt the holding of *United States v. Santiago Soto,* 825 F.2d 616 (1st Cir. 1987), and several other federal cases,[23] which hold that jeopardy does not attach when the trial court accepts a guilty plea unless the trial court imposes sentence and enters judgment. The federal courts appear to reason that the double jeop-

---

[22]See also *Hawkins v. State,* 30 Wis. 2d 264, 267, 140 N.W.2d 226 (1966) (jeopardy attaches when the guilty plea is "accepted" by the court); *Salters v. State,* 52 Wis. 2d 708, 714, 191 N.W.2d 901 (1971) (jeopardy attaches when the guilty plea is "entered"); *State v. Waldman,* 57 Wis. 2d 234, 237, 203 N.W.2d 901 (1973) (harmonizing *Hawkins* and *Salters* by stating that the guilty plea is not entered until accepted by the court).

[23]*See, e.g., Gilmore v. Zimmerman,* 793 F.2d 564 (3rd Cir.), *cert. denied,* 479 U.S. 962 (1986); *United States v. Combs,* 634 F.2d 1295 (10th Cir. 1980), *cert. denied,* 415 U.S. 913 (1981).

ardy protection is not violated because the accused's interests of finality and repose protected by the double jeopardy clause are less strongly implicated in the acceptance of a guilty plea than in a verdict of guilty. The state argues that with respect to felony counts one and two, which were amended to misdemeanor counts, these federal cases support the state's view that jeopardy did not attach upon the circuit court's acceptance of the defendant's no contest pleas.

In *Santiago Soto*, the criminal complaint initially charged the accused with two felonies. "For unknown reasons," 825 F.2d at 617, the information charged the accused with one misdemeanor. At the combined plea and sentencing hearing on the misdemeanor the district court, although expressing concern with the possible lack of criminal intent, accepted the guilty plea. Later in the same hearing the accused denied his guilt, "appearing to change his mind on the plea," 825 F.2d at 617. The district court on its own motion then vacated the guilty plea to the misdemeanor and dismissed the charge. A grand jury later indicated the accused of a felony for the same activity. The accused asserted that the district court's acceptance of the guilty plea to the lesser charge connotes an implied acquittal on the greater charge and that prosecution for the more serious charge would unconstitutionally subject him to a second prosecution for the same offense.

The *Santiago Soto* court, following earlier federal cases, rejected the view that double jeopardy always attaches upon acceptance of a guilty plea. The federal court of appeals concluded that acceptance of a guilty plea to a lesser included offense, followed by a rejection of that plea in the same hearing without imposition of sentence or entry of judgment, did not carry the same expectation of finality and tranquility as a jury verdict

after trial or as the entry of judgment and sentence following a guilty plea.[24]

The state also relies on *Gilmore v. Zimmerman,* 793 F.2d 564 (3rd Cir. 1986), in which the accused was charged with several offenses including homicide. The

[24]The *Santiago Soto* court cited *Brown v. Ohio,* 432 U.S. 161 (1977), in which the accused pleaded guilty to a misdemeanor, joyriding, and was sentenced and jailed. After he served his sentence, the state initiated a second prosecution for auto theft, a felony. The Court held that joyriding was a lesser included offense of auto theft, and double jeopardy prohibited a second prosecution. A second prosecution for the same offense offended the accused's interests in finality and repose after his first conviction.

The *Brown* case should be compared with *Ohio v. Johnson,* 467 U.S. 493 (1984). Johnson was indicted for offenses ranging from grand theft to murder. He pleaded guilty to lesser included offenses of involuntary manslaughter and grand theft and not guilty to the more serious offenses. Over the state's objections, the trial court accepted the guilty pleas and dismissed the more serious offenses on double jeopardy grounds. The United States Supreme Court concluded that the acceptance of the guilty pleas to some, but not all, the charges in the same indictment had none of the implications of an implied acquittal and did not constitute a verdict. Since the felony charges were filed and pending when the accused pleaded guilty, the Court perceived no concerns of prosecutorial abuse. Furthermore, the accused's interest in finality was implicated less, wrote the Court, than in a jury verdict case, because the accused knew of the pending charges and the state's objections to dismissal of the charges. Thus the Court, treating the acceptance of a guilty plea to some (but not all) pending charges differently from a conviction based on a jury verdict, held that jeopardy did not attach in that case when the trial court accepted the guilty plea to the lesser charges while the more serious charges remained pending. The Court concluded there was no prosecutorial overreaching and the state should not be denied its right to a full and fair opportunity to convict those who have violated the law.

district court accepted the accused's guilty plea to manslaughter. At sentencing the district court found "an inadequate factual basis to support the defendant's equivocal guilty plea," 793 F.2d at 567, and the district court, over the accused's objections, reinstated the not guilty plea to the original charges. Relying on *Brown* and *Johnson,* see note 20, the federal court of appeals concluded that the case involved a single prosecution with a guilty plea accepted while a more serious charge is pending; the case does not raise an issue of successive trials such as characterizes many controversies over double jeopardy.

The facts in *Santiago Soto* and *Gilmore* are distinguishable from those in the case at bar. In both cases, the district court accepted the guilty plea but then vacated it on grounds relating to the factual basis for the plea. In *Santiago Soto* when the circuit court accepted the guilty plea and rejected it in the same proceeding on grounds that the accused may not be guilty, it is hard to conclude that the accused was placed in jeopardy in any meaningful sense. In *Gilmore,* although the vacation of the plea was in a subsequent proceeding, the reason for the vacation was the same as in *Santiago Soto.*

In the case at bar, the circuit court never concluded that the acceptance of the no contest plea was defective on the ground that no factual basis existed or that the defendant had not entered the plea voluntarily or intelligently. Neither party claims that the circuit court's acceptance of the plea was erroneous. For these reasons we do not think the rationale of the cases upon which the state relies fits the facts of this case.[25]

---

[25]In an Arizona case in which, like the case at bar, no challenge was made to the grounds for accepting the plea, the Arizona Supreme Court concluded that a trial court could not *sua sponte* vacate a guilty plea which the court had validly accepted. In

The federal cases resemble *Salters v. State,* 52 Wis. 2d 708, 191 N.W.2d 19 (1971), upon which the state relies for the concept of "continued jeopardy." The state argues that even if this court finds that jeopardy attaches on felony counts one and two when the circuit court accepted the defendant's pleas to these counts as amended, the same jeopardy that attached when the pleas were accepted continued when the pleas were vacated and the information reinstated. Because *Salters* is so factually different, we do not believe *Salters* governs this case.

Charged with first degree murder, Salters pleaded guilty to a lesser charge. After ascertaining that it was voluntary, the circuit court accepted the plea. Thereafter a police officer testified about the facts. During the testimony the circuit court expressed concerns about the propriety of the charge reduction. The proceedings were adjourned. At a later proceeding the state, "at the request of the circuit court," 52 Wis. 2d at 710, moved to reinstate the original complaint. The circuit court granted the motion and set aside the guilty plea. A different judge presided over the reinstated charges. At these proceedings the state again moved for reduction of the charge, the accused again pleaded guilty to the

*Williams v. Superior Court,* 130 Ariz. 209, 635 P.2d 497 (1981), the accused entered into a plea agreement, the court accepted the guilty plea, and the case was set for sentencing. At the time set for sentencing a second judge rejected the plea agreement and reinstated the original charges. The accused asserted that the acceptance of the plea placed him in jeopardy and that the plea could not be vacated without his consent. The Arizona Supreme Court held that once the trial court accepted the plea agreement and entered the finding of guilty, jeopardy attached and the trial court could not later reject the plea agreement without subjecting the accused to double jeopardy.

reduced charge, and the circuit court accepted the plea and sentenced the accused. Subsequently the accused moved to vacate the guilty plea and the conviction of the reduced charge on double jeopardy grounds.

The supreme court denied the double jeopardy challenge, declaring that there is continuing jeopardy from the entry of the plea[26] until an accused has had a valid trial free from reversible error for the offense charged.[27] The court explained that "in order for there to be validity to the assertion of double jeopardy there would have to be a judgment of acquittal or conviction or a dismissal of the charges and then a second prosecution begun on the basis of the same offense." *Salters,* 52 Wis. 2d at 715. The court concluded that when the circuit court ordered the original complaint reinstated it did not end one jeopardy and begin another. According to the *Salters* decision, jeopardy continues until a circuit court enters a judgment of conviction or acquittal.[28]

More significantly, to understand the court's continuing jurisdiction theory, the *Salters* court went on to

---

[26]In *State v. Waldman,* 57 Wis. 2d at 237, the court stated that a plea was not entered until accepted by the trial court.

[27]The court cited *State v. Schmear,* 28 Wis. 2d 126, 135, 135 N.W.2d 842 (1965), for the continuity of jeopardy theory. The *Schmear* case, like the other Wisconsin continuity of jeopardy cases we examined, involves a mistrial or reversal of a conviction because of error and a retrial. *Schmear* recognizes that an alternative theory for declaring that the accused's protection against double jeopardy is not violated is the waiver theory, namely that the accused cannot ask for and receive a new trial on grounds of error and then inconsistently claim being placed in jeopardy in the first trial.

[28]As in *Schmear,* the *Salters* court alternatively concluded that when Salters pleaded guilty a second time he had knowingly, intelligently, and expressly waived any objection on double jeopardy grounds.

state that the circuit court had, contrary to the supreme court's directive, accepted the plea before receiving evidence supporting its voluntariness and factual accuracy. [29] Thus *Salters,* like the federal cases described above, involved a court's accepting a guilty plea without fully hearing the evidence and making a determination of voluntariness and factual accuracy. Thus the acceptance of the plea was erroneous.

The case at bar differs significantly from *Salters.* In the case at bar the circuit court satisfied itself that the plea was voluntary and factually accurate. The circuit court never changed its mind about the validity of the plea.

The circuit court in *Salters* refused to convict or acquit the accused on his guilty plea but instead granted the state's (in effect the court's own) motion to reinstate the greater charge. The circuit court in the case at bar is deemed to have ordered the entry of a judgment of conviction because it ordered a presentence investigation. As we explained previously, the circuit court cannot, under the statutes, order a presentence report until after conviction.

Before accepting a plea agreement a circuit court may, as this court has written, ask sufficient questions, including the prosecutor's reasons for entering the plea agreement, to satisfy itself of the wisdom of accepting the plea to reduced charges. The circuit court, like a jury,

---

[29]The court also stated that

"in cases in which the prosecutor has moved to reduce the charge in the complaint it is also proper, although not mandatory, for the court to ascertain why the charge was reduced. After ascertaining this information and assuring itself of the voluntariness of the plea, the factual basis for the charge, and the propriety of any proposed reduction of the charge, the court should then determine whether or not to accept the plea." 52 Wis. 2d at 715.

need not consult a presentence report to have sufficient knowledge to decide whether to find the accused guilty. Indeed the statutes prohibit the circuit court from ordering a presentence investigation until there has been a conviction.

For the reasons set forth, we conclude that because jeopardy attaches when a circuit court accepts an accused's plea of guilty, jeopardy attached in this case when the circuit court accepted the defendant's no contest pleas to amended counts 1 and 2. We agree with that part of the circuit court's order dismissing with prejudice felony counts 1 and 2.

We do not, however, agree with that part of the circuit court's order vacating the no contest pleas to the two misdemeanor counts and dismissing those counts. The defendant moved for "specific performance" of the plea agreement, and the defendant has never withdrawn his pleas. The defendant has asserted, and correctly so, that Judge Gage erred by vacating the no contest pleas to the misdemeanor charges. Judge Gage's order vacating the misdemeanor pleas was of no effect, and the parties should be returned to the situation existing before the vacation of the pleas. We remand the matter to the circuit court to reinstate the misdemeanor charges and the no contest pleas and for sentencing proceedings.[30]

---

[30]The state calls our attention to *Campas v. Superior Court,* 159 Ariz. 343, 767 P.2d 230 (Ct. App. 1989), supporting the result we reach in reinstating the misdemeanor charges and the no contest pleas. Campas entered his guilty plea to one count of an indictment. A second judge vacated the plea. The appellate court held that the second judge was bound by the terms of the plea agreement. The remedy was a remand for sentencing pursuant to

## IV.

We turn to counts 3 and 4 which the prosecutor moved to dismiss and which the circuit court dismissed when accepting the defendant's no contest plea to amended counts 1 and 2. The state argues that double jeopardy does not bar the reinstatement of these counts because jeopardy never attached. The state asserts that the defendant has never pleaded guilty to these counts and has never been acquitted or convicted of or punished for the commission of these two felony charges.

Relying on *Montgomery v. State,* 128 Wis. 183, 195, 107 N.W. 14 (1906), *Ohio v. Johnson,* 467 U.S. 493, 501 (1984), and *Serfass v. United States,* 420 U.S. 377 (1975), the state asserts that the court of appeals' reinstating these two felony counts accords with state and federal supreme court precedent. We conclude that the cases the state cites are distinguishable from this case.

In *Montgomery v. State,* 128 Wis. 183, 107 N.W. 14 (1906), the court granted the prosecutor's motion to dismiss the charge to which the accused had pleaded not guilty. The charge was dismissed without prejudice; the prosecutor announced his intention to bring further charges. Unlike the case at bar, *Montgomery* did not involve a dismissal with prejudice or a dismissal of some charges upon a guilty plea to other specified charges pursuant to a plea agreement.[31]

In *Ohio v. Johnson,* 467 U.S. 493 (1984), after accepting the accused's guilty pleas to some charges, the

---

the original plea agreement. See also *United States v. Hecht,* 638 F.2d 651, 657–58 (3rd Cir. 1981).

[31]The state could also have cited *State v. Waldman,* 57 Wis. 2d 234, 203 N.W.2d 691 (1973), which like *Montgomery* involved a not guilty plea and the court's granting the prosecutor's request to dismiss the charge without prejudice.

trial court, over the state's objections, dismissed the more serious charges to which the accused had not pleaded. The Supreme Court held that jeopardy did not attach to the dismissed charges and that the state could try the accused on the dismissed charges. In contrast, the prosecutor in the case at bar agreed to dismiss the two charges to which the defendant did not plead with the promise not to reprosecute. In *Johnson* because the accused knew of the pending charges when he pleaded guilty the Court was not concerned about prosecutorial abuse and did not think the accused's interest in finality was seriously implicated. In this case the defendant pleaded guilty with the assurance that the felony charges would be dismissed on the merits and his plea agreement was accepted. In this case the court is concerned about potential prosecutorial abuse and the defendant's interest in finality is implicated.

In *Serfass v. United States,* 420 U.S. 377 (1975), the federal district court dismissed an indictment, holding that the accused was entitled to have his local draft board reexamine his draft status. When the government appealed to the court of appeals, the accused contended that the court lacked jurisdiction because the government was prohibited from appealing by the double jeopardy clause of the Fifth Amendment. The Supreme Court concluded that because no jury had been empaneled, jeopardy had not attached when the court ruled on this pre-trial dismissal motion. Accordingly the Court concluded that the dismissal was an appealable order.

In this case, unlike in the cases the state cites, the two felony charges were dismissed *with prejudice* upon the state's motion. This case involves a plea agreement in which the defendant pleaded guilty to two reduced charges in return for the dismissal of two felony charges.

The circuit court dismissed the charges upon the prosecutor's express agreement that the prosecutor would not bring charges for any other incidents between the defendant and the victim or the victim's sister. The state has not asked that the plea agreement be vacated and the defendant has complied with the plea agreement and the circuit court's order by cooperating in the presentence investigation.

We conclude that allowing the state to reinstate the two felony charges dismissed with prejudice in this case would amount to allowing the state to make repeated attempts to convict an individual for the same offense. Allowing the state to reinstate the two felony charges in contravention of a plea agreement with which the defendant has complied violates the principles of finality and fairness underlying the double jeopardy clause.

Our court has stated that when the prosecutor on behalf of the sovereign state has contracted with an accused to dismiss charges and the court has dismissed the charges, a "subsequent reprosecution of a charge dismissed as a result of a plea bargain is barred by elementary due process." *Nelson v. State,* 53 Wis. 2d 769, 775, 193 N.W.2d 704 (1972). See also *Austin v. State,* 49 Wis. 2d 727, 734-36, 183 N.W.2d 56 (1971); *Mallon v. State,* 49 Wis. 2d 185, 189-90, 181 N.W.2d 364 (1970); *State v. Bond,* 139 Wis. 2d 179, 187-88, 407 N.W.2d 277 (Ct. App. 1987); *Santobello v. New York,* 404 U.S. 257, 262 (1971). We thus have concluded that principles of fairness, finality and repose prohibit the prosecutor from reprosecuting charges that a court dismissed as a result of a plea agreement. If the prosecutor is bound by a valid plea agreement, and due process protects the defendant from the prosecutor's withdrawing from the agreement,

we do not believe that considerations of double jeopardy and due process permit a circuit court to *sua sponte* relieve the prosecutor from a valid plea agreement.

When the December 11 proceeding ended, the defendant had every reason to believe that pursuant to the plea agreement the four felony charges were terminated and that his convictions of the misdemeanors were final. Acting on this belief the defendant cooperated in the presentence investigation.

The circuit court then vacated its own order accepting the pleas and dismissing the felony counts and reinstated the felony charges on the basis of the presentence investigation without any showing that the acceptance of the guilty plea was erroneous on grounds of involuntariness or lack of a factual basis. Under these circumstances, the circuit court's *sua sponte* order vacating the pleas significantly implicates the public's and the defendant's interests in finality, repose, and fairness in the same way as a prosecutor's attempt to withdraw from a validly accepted plea agreement.

■■■

We conclude that the state cites no case supporting its position that the two felony charges dismissed with prejudice under the circumstances of this case may be reinstated. In this case, fundamental fairness—whether derived from the double jeopardy or due process clause—prohibits the prosecutor from reprosecuting the dismissed counts (counts 3 and 4 of the original information).

The dissent charges that "while there may not be a provable fraud in this case, it certainly appears as if there was some sleight of hand maneuvering here by the assistant district attorney and the defendant." Dissenting opinion at 966. The dissent provides no description or evidence of any such maneuvering. Unsupported alle-

gations are not appropriate simply because of disagreement with the wisdom of a district attorney's offering to reduce charges and the circuit court's accepting the defendant's plea of no contest to reduced charges and convicting the defendant of these charges.

■

The proper operation of the criminal justice system depends on the district attorney's office exercising its prosecutorial discretion in a sound manner and on the circuit courts' exercising their powers in the public interest. The circuit court is not a party to a plea agreement, need not agree to reduce the charges upon the prosecutor's motion, and need not accept the prosecutor's or defense's sentencing recommendations.

The public interest is to convict persons of the crimes of which they are guilty and to impose penalties that fit the crime and criminal. Increasingly there has been public, legislative, and judicial concern for the needs and well-being of victims, especially child victims and witnesses. *See, e.g.,* ch. 949, Stats. 1989-90; *State v. Gilbert,* 109 Wis. 2d 501, 513, 515, 326 N.W.2d 744 (1982). In this case, both the prosecutor and the circuit court had sufficient opportunity to obtain information relevant to the plea agreement and to make a fully informed decision based on the information legally available to them. Both could have given the victim an opportunity to express her views about the plea agreement before the circuit court accepted the defendant's plea.

■

The relevant public policy in this case, as discussed earlier, is the policy provided by the legislature in sec. 972.15 providing that a circuit court should not order—and therefore should not consider—a presentence investigation before conviction. The legislature understood that presentence investigations may rest on hear-

say and contain information bearing no relation to the crime with which the defendant is charged. Presentence investigations are, according to the legislature, relevant to sentencing, not to the determination of guilt or innocence. One purpose of sec. 972.15 is to prevent possible prejudice to the defendant from premature submission of the presentence investigation to the circuit court. Another is to allow a defendant to speak truthfully in the presentence investigation without fear that a disclosure may be used by the circuit court *sua sponte* to reexamine the charge and vacate a guilty plea, a conviction, and plea agreement.

■■

The legislatively declared public policy of the state leads to the conclusion that a circuit court cannot vacate its dismissal on the merits of counts 3 and 4 of the information on the basis of information derived from the presentence investigation conducted, as required by statute, after conviction.[32]

For the reasons set forth, we agree with that part of the circuit court's order dismissing with prejudice felony counts 3 and 4.

## V.

■■

As both the state and the defendant urge, we exercise our superintending authority, and direct each circuit court to refrain from *sua sponte* vacating a guilty or no contest plea after the circuit court validly accepted the plea by assuring itself of the voluntariness of the plea and the factual basis for the charges unless the circuit court finds that there was fraud in procuring the plea or that a party intentionally withheld from the circuit court

---

[32]See *supra* note 13.

material information which would have induced the circuit court not to accept the plea.

This holding preserves the circuit court's right and duty to be apprised of all relevant information before accepting a guilty or no contest plea and before sentencing and allows the circuit court to make informed decisions protecting the public interest. *State v. McQuay,* 148 Wis. 2d 823, 436 N.W.2d 905 (Ct. App. 1989), *rev'd on other grounds,* 154 Wis. 2d 116, 452 N.W.2d 377 (1990). This holding comports with principles of fundamental fairness, finality, and repose. This holding also avoids, as the state's brief explains, one of the unfortunate unintended effects of the court of appeals' decision in this case permitting the circuit court's *sua sponte* vacating of the no contest plea, namely that an accused will be reluctant to speak truthfully in the presentence investigation for fear that a disclosure may cause the circuit court to vacate the plea or plea agreement.

We therefore reverse the court of appeals' decision and remand the cause to the circuit court for reinstatement of the amended information alleging two misdemeanor charges and the pleas of no contest and for sentencing proceedings.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

STEINMETZ, J. *(concurring).* This case is a perfect example of why trial judges should be very selective in accepting plea bargains. Before accepting a plea bargain, a judge must take into account several important factors.

First, a judge has the right to know the nature and severity of the charges being dismissed or reduced. Exclusive authority of the judge is being exercised, and,

therefore, the judge has the right to know what the original charges are and the significance of any dismissals.

A judge must also be informed as to the attitude of the victim or victims of the defendant's crimes, particularly when crimes of violence or sexual abuse are involved. It would be best to have the victim in court when this information is made known to the judge because if the victim is not present, any incorrect statement that the victim acquiesces to in the plea arrangement may create a fraud on the court resulting in the judge later voiding the entire proceedings.

Furthermore, the judge should be aware of the defendant's previous convictions and any other illegal contact between the defendant and the victim which are not being charged. This information is necessary for the judge to make an informed decision to accept or reject the plea bargain.

A judge does not have a duty to accept a plea arrangement, nor may a judge participate in its formulation. But rather, and, as we have said before, the judge is obligated only to accept or refuse such an arrangement. For that role, the judge must have as much information as possible and carefully consider the factors outlined above. If the parties disagree with the judge's decision, the district attorney can move to dismiss the charges. If the motion is granted, the district attorney can issue new charges at his/her discretion.

I am authorized to state that JUSTICE WILLIAM G. CALLOW joins this concurring opinion.

LOUIS J. CECI, J. *(dissenting).* There is something fundamentally wrong in this case. I conclude that the majority opinion's interpretation of the law of double jeopardy is directly contrary to the established law of this state and further conclude that the plea agreement

in this case is against public policy and is therefore void *ab initio*. I therefore dissent. I feel compelled to begin by bringing to light facts in the record, as shown by letters and the presentence report, which the majority opinion ignores.

The presentence report (which had been opened before it was received by these chambers) is before this court as part of the record transmitted on appeal and, as even the majority acknowledges, was part of the reasoning used by the trial court when it vacated the no-contest pleas and reinstated the four felony charges. One need not be a *juris doctor* to understand why the trial court was shocked by the disclosures contained in that report, a report detailing a course of unspeakable sexual abuse of this child by the defendant *before the child became 16 years of age.*

On January 6, 1984, the defendant, who was 39 years old, had been married, fathered four children, divorced, and then remarried almost two years previously. The defendant had earned a master's degree and owned a Corvette shop.

On January 6, 1984, the victim, born February 22, 1968, was a 15-year-old sophomore in high school. She was a friend of the defendant's children by his prior marriage and had been welcomed into the defendant's home as such for years. The victim lived in the same neighborhood as the defendant.

From about the time the victim had turned 11 years of age, she had begun to spend significant amounts of time at the defendant's home. As a result, the victim became dependent upon the defendant and his wife. Eventually, the defendant became such a father figure to her that she called him "Poppa C." For a number of years before the night in question, the victim slept over

at the defendant's home at least one night each weekend, visiting with the defendant's children.

On January 6, 1984, the victim and her younger sister were visiting the defendant's children and sleeping over at the defendant's home. After dinner, the defendant, his wife and two of his children, the victim, and the victim's younger sister were all watching rented movies on the television in the defendant's living room. The defendant was seated on a couch with the victim. The defendant's wife, his children, and the victim's younger sister were all seated nearby in the same room. The victim was half asleep, was lying on her back, and had her legs lying across the defendant's lap. While everyone else in the room was concentrating on the movie playing on the television, the defendant was concentrating on the 15-year-old girl lying next to him.

The defendant surreptitiously maneuvered his hand under the blanket that was covering her and placed his hand on her leg. Being careful that no one else in the room noticed, he slowly moved his hand up the victim's leg, massaging and caressing her until he had his hand on her vaginal area. The victim was startled and became awake, but the defendant whispered to her to pretend that she was still sleeping.

The defendant then proceeded to sexually assault the victim by rubbing her vaginal area through the pair of sweatpants that she was wearing.[1] Not satisfied to be

---

[1]Each of the acts between the defendant and victim are sexual assaults pursuant to sec. 940.225(2)(e), Stats. 1983–84, which provides:

**940.225 Sexual assault.** . . .

. . ..

**(2)  Second Degree Sexual Assault.** Whoever does any of the following is guilty of a Class C felony:

. . ..

massaging this 15-year-old's vaginal area through her sweatpants, the defendant slowly untied the drawstring of her sweatpants and manipulated his hand inside her panties. All the while making sure that his family and the victim's younger sister didn't take notice, he then began to sexually assault her by inserting his finger into her vagina.

As one rented movie ended and another began, the other people in the room drifted one by one upstairs to bed. The defendant told his wife that he would be up to bed in a while; he just wanted to see how the next movie came out. When the defendant and the girl were finally alone in the room, the defendant sexually assaulted the victim by fondling her breasts and continued to sexually assault her by inserting his finger into her vagina. Eventually the defendant sexually assaulted the victim by guiding her into performing fellatio upon him. The defendant then took the victim into the basement of his home and again sexually assaulted her by performing cunnilingus upon her. Thereafter, the defendant sexually assaulted the victim almost every other day: by having her perform fellatio upon him and by his performing cunnilingus on her on the couch, in the bed, on the floor, in the basement, and in a vehicle.

(e) Has sexual contact or sexual intercourse with a person who is over the age of 12 years and under the age of 16 years.

Pursuant to sec. 940.225(4), Stats. 1983–84, the victim's consent is not an issue under sec. 940.225(2)(e). Section 940.225(4) provides in part:

(4) **Consent.** 'Consent', as used in this section, means words of overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact. Consent is not an issue in alleged violations of subs. (1)(d) and (2)(c), (d) and (e) . . ..

The victim's consent to the ongoing sexual assaults would only become an issue after the victim's 16th birthday, which occurred on February 22, 1984. Consent is not an issue prior to that date because pursuant to sec. 940.225(4), Stats., consent can only be given by a person who is competent to show by words or overt actions that she is freely giving agreement to have sexual intercourse or sexual contact. Persons under the age of 16 years are incompetent to give consent to having sexual intercourse or sexual contact, similar to persons who suffer mental illnesses or who are unconscious, *see* sec. 940.225(2)(c)–(e) and (4), Stats. 1983–84.

The pattern of sexual activity between the defendant and the victim continued until April 7, 1984, six and one-half weeks after the victim had turned 16 years old, when, according to the victim, the defendant had penis-vaginal sexual intercourse with her for the first time. The defendant thereafter continued his sexual abuse of the victim for a period of over four years.

She saw a counselor in March of 1988, who told her that she had been abused. She had started to have nightmares where she would awaken screaming, shaking, and sweating, and then she would vomit. The victim felt isolation, shame, and "different than" her peers.

For all of the conduct on the part of the defendant, which robbed the victim of her adolescence and innocence and caused her significant psychological and economic harm,[2] the Outagamie County District Attorney's

---

[2]According to a letter received by the circuit court from Chris Servaty, M.S., a licensed psychologist who was treating the victim, the victim exhibited the symptoms, issues, and feelings common to incest victims. The psychologist stated that she had ten years of experience in treating sexual abuse victims. The letter stated in part:

Because Mr. Comstock was in the role of caregiver/surrogate father

office filed an information on October 6, 1989, consisting of only four Class C felony counts. All four counts related only to the acts of the defendant on the night of January 6, 1984. No other counts were filed despite the victim's complaints about the defendant's sexual assaults of the victim after January 6, 1984. At arraignment after a preliminary hearing on October 6, 1989, the defendant pleaded not guilty to all four counts of the information.

At a hearing on December 11, 1989, the circuit court was informed by the assistant district attorney of a proposed plea agreement to dismiss felony counts 3 and 4 of the information, to reduce felony counts 1 and 2 to misdemeanors with a cap of 75 days' jail time, and to allow probation to be transferred to Texas. The defendant's attorney advised the court that the plea agreement also prevented the district attorney's office from bringing charges for any other offenses committed by the defen-

to [the victim], he held power and authority over her. [The victim] was not in a position to consent to the sexual relationship given the power differential. As is the case with all incest victims the adult parental figure has responsibility to maintain appropriate sexual boundaries with children under their care. [The victim] was a very vulnerable adolescent, feeling estranged from her family of origin and in need of adult attention, caring, and direction. Mr. Comstock encouraged [the victim's] emotional dependency and exploited her vulnerability in order to meet his own needs.

[The victim] could not identify nor disclose the sexual abuse until she had received some distance and emotional detachment from Mr. Comstock. The dynamic of 'keeping the secret' is extremely common with incest victims. Fears of retribution, of not being believed, of being responsible for negative outcomes for the family, and feelings of guilt and shame prevent victims from disclosing or 'telling the secret'.

. . .

[The victim's] current recovery process will probably require several more years of therapy. The average range of treatment for incest victims is three to five years.

dant against either the victim *or her younger sister,* who also had been assaulted by the defendant. The victim stated that she was present in court on that day and was shocked by the plea bargain. She had not previously been advised of the plea bargain and only knew about it when it was presented in open court. She was not asked to comment about the plea bargain. The entire proceeding took less than 20 minutes.

The majority opinion would like readers to infer, by footnoting the victims' rights statute, that the victim had an opportunity to express her dissatisfaction with the plea to the circuit court. Majority op. at 931 n.14. Such an inference should not be made. The verbatim transcript of the relevant portion of the plea hearing is as follows:

[ASSISTANT DISTRICT ATTORNEY]: Your Honor, [the victim] indicated she'd like to be present for that [sentencing] hearing, and it would be easier for her to come back on a Friday or a Monday, and would request to see if we could get that date on a Friday or Monday.

THE COURT: Are you in school, ma'am?

[THE VICTIM]: Yes.

[THE VICTIM]: University of Minnesota in Minneapolis.

THE COURT: And what is your—Don't you have any holiday break?

[THE VICTIM]: Oh, yes, it would just be a little bit inconvenient. I will be here regardless of the date, but I was asked if I had a preference of the date.

THE COURT: Are there classes going on at that time?

[THE VICTIM]: Yes. We are on a trimester. Our break ends the 2nd.

[DEFENDANT'S ATTORNEY]: I might point out, Your Honor, the prior January 15 is an official

Martin Luther King Day, I don't know if Minnesota where [the victim] goes to school has that same date. In effect it would be, if they did have that same observance, would be the first school day of that week, so I guess it would be equivalent to a Monday if they did have that same observance.

THE COURT: Well, I don't want to discourage your presence, but it looks like you can be available reasonably.

[THE VICTIM]: That's okay.

THE COURT: So I am going to keep it on that date. The 15th or 16th?

[DEFENDANT'S ATTORNEY]: Sixteenth. Thank you.

As can easily be seen from the transcript, the victim was not given the opportunity to express her dissatisfaction with the plea to the circuit court.

The issue that I dissent from, whether double jeopardy and due process prevent the reinstatement of counts 3 and 4, is an issue of constitutional fact. This court reviews questions of constitutional fact without deference to the decisions of the lower courts. *State v. Anderson,* 165 Wis. 2d 441, 447, 477 N.W.2d 277 (1991).

This court has consistently held that jeopardy "attaches" upon the circuit court's *acceptance* of a guilty or no-contest plea.[3] Jeopardy also attaches when a witness is sworn in a trial to a court without a jury or when the jury has been sworn in a jury trial. Section 972.07, Stats. However, until today, this court has never held that jeopardy attaches to separate counts of an information to which a defendant had pleaded not guilty, which

---

[3]*See State v. Waldman,* 57 Wis. 2d 234, 237, 203 N.W.2d 691 (1973); *Salters v. State,* 52 Wis. 2d 708, 714, 191 N.W.2d 19 (1971); *Hawkins v. State,* 30 Wis. 2d 264, 267, 140 N.W.2d 226 (1966); and *Belter v. State,* 178 Wis. 57, 62, 189 N.W. 270 (1922).

were dismissed prior to a defendant's trial, and to which a court had not accepted a defendant's guilty or no-contest plea. The result reached by the majority today is directly contrary to *State v. Waldman,* 57 Wis. 2d 234, 203 N.W.2d 691 (1973), and *Montgomery v. State,* 128 Wis. 183, 107 N.W. 14 (1906). My examination of *Waldman* and *Montgomery,* in conjunction with U.S. Supreme Court precedent, convinces me that the majority reaches an erroneous result today.

In *Waldman,* this court stated that "[a] plea of not guilty does not trigger double jeopardy." *Waldman,* 57 Wis. 2d at 238. Therefore, following *Waldman,* jeopardy never attached to counts 3 and 4.

In *Montgomery,* this court stated that "the accused must actually be put on trial—that is the trial must have commenced—before he can be said to have been in jeopardy." *Montgomery,* 128 Wis. at 195. The defendant here stands in a similar position as the defendant in *Montgomery* with regard to counts 3 and 4 which were dismissed: he was never in jeopardy as to counts 3 and 4.

The U.S. Supreme Court's precedent also supports my conclusion that jeopardy never attached to counts 3 and 4. In *Serfass v. United States,* 420 U.S. 377 (1975), the Court held that jeopardy does not attach to charges in an indictment that are dismissed prior to a defendant's being put to trial. *Serfass,* 420 U.S. at 389. The federal district court in *Serfass* had granted the defendant's motion to dismiss the indictment prior to trial. The Supreme Court held that "[w]ithout risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Id.* at 391–92. The Court concluded its analysis by noting that it is a "fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy." *Id.* at 393.

It is apparent from reading the information that the offenses charged in counts 3 and 4 were separate and different acts from the offenses which were charged in counts 1 and 2, which were the reduced counts. *See State v. Eisch,* 96 Wis. 2d 25, 31–34, 291 N.W.2d 800 (1980) (four acts of sexual intercourse, each different in kind from the others and differently defined in the statutes, constitute four separately chargeable criminal offenses, when all of the acts took place at the same location within a period of time that did not exceed two and one-half hours). I would therefore conclude that double jeopardy does not bar the further prosecution of counts 3 and 4.

In addition, no interest of this defendant protected by the double jeopardy clause is implicated by allowing continued prosecution of counts 3 and 4. The double jeopardy clause offers protection against a second prosecution for the same offense after acquittal; it protects against a second prosecution for the same offense after conviction; and it protects against multiple punishments for the same offense. *Ohio v. Johnson,* 467 U.S. at 498. The double jeopardy clause therefore protects the principles of fairness and repose: multiple trials against a defendant for one criminal act are prohibited, and the state cannot sentence a defendant beyond the limits imposed by the legislature. *Id.* at 498–99. Here, none of these protections would be implicated by allowing reinstatement of counts 3 and 4. There has been no acquittal on counts 3 and 4. Counts 3 and 4 are different offenses than what was charged under counts 1 and 2, so there would not be a second prosecution or multiple punishments. As the defendant committed four felonious criminal acts, the continued prosecution of counts 3 and 4 would not be a multiple trial for one criminal act nor

would it be expanding the defendant's sentence beyond the limits imposed by the legislature.

I conclude that double jeopardy does not prevent the reinstatement of felony counts 3 and 4 of the information. Counts 3 and 4 were dismissed by the circuit court prior to accepting the defendant's plea, and, therefore, jeopardy never attached to counts 3 and 4. In deciding that these counts cannot be reinstated, the majority opinion reaches a result that comports with neither the U.S. Supreme Court's precedent nor the precedent of this court.

The reinstatement of counts 3 and 4 is required in this case, not only because they are not barred by double jeopardy, but also because to do otherwise would be against public policy. In *Young v. State,* 49 Wis. 2d 361, 182 N.W.2d 262 (1971), we stated that in certain circumstances a court must vacate a previously accepted plea agreement if the plea agreement is against public policy. In *Young,* the prosecutor agreed to recommend probation in exchange for a no-contest plea. After the plea was accepted, the presentence report recommended commitment to the state correctional institution because of the defendant's adjustment difficulties and mental health problems. In responding to the defendant's assertion that the district attorney was bound to recommend probation regardless of what the presentence investigation revealed, we noted that such an agreement would have to be vacated as against public policy:

> Even if the presentence report developed facts that made probation not in the best interests of the community or of the defendant himself, the district attorney, it is argued, bound himself to recommend what he no longer believed to be a proper disposition of the case. *If this were in fact the plea agreement, reversal would be required, not because the agreement was*

965

*not kept, but because the agreement was void as against public policy ab initio.*

*Young,* 49 Wis. 2d at 369 (emphasis added).

The totality of the circumstances in this case and the egregiousness of the offenses as shown by the record before this court require that this plea agreement be considered void as against public policy. While there may not be a provable fraud in this case, it certainly appears as if there was some sleight-of-hand maneuvering here by the assistant district attorney and the defendant. I conclude that the plea agreement in this case is void *ab initio.*

This plea agreement is void as against the following public policies: sentencing defendants with penalties appropriate to the crimes committed; only allowing those plea agreements that are believed by the district attorney to be a proper disposition of the case; serving the public's interest in prosecuting child abusers; and concern for the needs and well-being of victims. After acknowledging the above public policies, the majority opinion implies that they are not significant and states that they are not relevant to this case because, according to the majority, the only relevant public policy is that a court should not consider a presentence investigation prior to conviction. Majority op. at 952–953. The majority opinion does not attempt to explain why the one public policy it hangs its hat upon is more important than the public policies listed above. When one considers and weighs all relevant public policies in this case, it is apparent that the plea agreement here is against public policy.

The proposed sentence of 75 days does not take into account the rehabilitative needs of this particular victim. The victim in this case has suffered significant psychological damage and needs to see the defendant punished

as an important part of her therapy. The victim's psychologist stated:

> The last issue I would like to respond to in this letter is the importance of [the victim's] need to hold Robert Comstock accountable for the harm and trauma he has caused her to experience. It has required a tremendous amount of personal courage and emotional energy for [the victim] to pursue legal options against her perpetrator. This is a way for her to appropriately express her anger and to reclaim a sense of personal power in her life. It is an important step toward her recovery. She needs to feel that her victimization is being taken seriously by the court system and that others will hold him accountable as well.

We have previously stated, in a unanimous opinion by Justice Abrahamson, who writes for the majority today, that not prosecuting an alleged child abuser for his or her acts "may inflict a greater harm on the child by allowing the alleged abuser to go free and by demonstrating to the child that the state of Wisconsin does not place a high enough value on the child's suffering to bring to justice the person alleged to have caused the suffering." *State v. Gilbert,* 109 Wis. 2d 501, 507, 326 N.W.2d 744 (1982).[4] Today's majority opinion sadly abandons this concern for the victim's welfare and allows Mr. Comstock to get off with a virtual slap on the wrist for the heinous acts he has committed. Whatever

---

[4]*See also State v. Jones,* 151 Wis. 2d 488, 496, 444 N.W.2d 760 (Ct. App. 1989) ("where a minor child has been the victim of a sexual crime, and where the trial court finds that significant incarceration of the perpetrator of that crime will have a positive influence on the child's recovery from its effects," it is "especially" appropriate to consider the victim's rehabilitative needs at sentencing).

due process interests the defendant has are far outweighed by the public policy concerns outlined above.

In addition, the cases that the majority opinion relies upon at 950 for the proposition that a "subsequent reprosecution of a charge dismissed as a result of a plea bargain is barred by elementary due process" are inapplicable to this case. The case of *Nelson v. State*, 53 Wis. 2d 769, 775, 193 N.W.2d 704 (1972), merely mentioned in dicta that other cases had so held. The cases cited by *Nelson* are *Austin v. State*, 49 Wis. 2d 727, 734–36, 183 N.W.2d 56 (1971); and *Mallon v. State*, 49 Wis. 2d 185, 189–90, 181 N.W.2d 364 (1970). In both *Austin* and *Mallon* the issue was whether a defendant could withdraw a guilty plea after uncharged offenses were "read in" to the record at the time of sentencing pursuant to the defendant's plea bargain. *Austin* and *Mallon* are therefore inapplicable to this case. The court of appeals decision in *State v. Bond*, 139 Wis. 2d 179, 187–88, 407 N.W.2d 277 (Ct. App. 1987), and the U.S. Supreme Court decision in *Santobello v. New York*, 404 U.S. 257, 262 (1971), both concerned the issue of binding the state to a prosecutor's promise, which is not the issue before the court today.

I would affirm that portion of the unanimous court of appeals decision which held that jeopardy did not attach to the two charges dismissed in this case and that, therefore, double jeopardy does not bar their reinstatement. In addition, I conclude that the plea agreement in this case is against public policy and is therefore void *ab initio*.

The manner in which this entire case has been handled by the district attorney is shameful. The sexual and psychological abuse suffered by this victim—*when she was a child*—cries out for justice, and this court now compounds the injustice.

For the reasons stated and because there is something fundamentally wrong in this case as determined by the majority, I dissent.