**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**February 19, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP110-CR**

Cir. Ct. No. **2021CF949**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TIMOTHY LESTER TROON, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Rock County: BARBARA W. McCRORY, Judge. *Reversed and cause remanded with directions.*

Before Kloppenburg, Nashold, and Taylor, JJ.

¶1 TAYLOR, J. Timothy Lester Troon appeals a judgment of conviction for operating while intoxicated as a fifth offense ("OWI-5th") and an order denying his postconviction motion. In that motion, Troon argued that the

circuit court erred in sua sponte vacating his first plea and judgment of conviction based on a disagreement between the parties about the joint sentencing recommendation that followed the court's acceptance of his plea. We conclude that the circuit court erred as a matter of law in vacating Troon's first plea and judgment of conviction. Therefore, we vacate Troon's current conviction, reinstate his first plea and judgment of conviction, and remand with directions for further proceedings.

## BACKGROUND

¶2 In September 2021, a Rock County deputy sheriff investigated a report that a car was being driven erratically and had pulled over in a park and ride lot. When the deputy encountered the driver of the car, eventually identified as Troon, the driver was sleeping in the driver's seat with the car turned off but still warm to the deputy's touch. After performing field sobriety tests and a preliminary breath test that yielded a .226 breath alcohol concentration, Troon was arrested and charged with OWI-5th, operating with a prohibited alcohol concentration as a fifth offense, failure to install an ignition interlock device, and operating a vehicle while revoked.

¶3 The parties reached a plea agreement, and in April 2022, a plea and sentencing hearing occurred. At the hearing, the State was represented by a substitute prosecutor because the assigned prosecutor, who had negotiated the plea agreement, was unavailable. Defense counsel presented the circuit court with the parties' plea agreement and joint sentencing recommendation as follows: Troon would plead guilty to the OWI-5th charge and the other charges would be dismissed and read in for sentencing purposes; Troon would pay a $600 fine; Troon's driver's license would be revoked for three years and, if reinstated, a

2

three-year installation of an ignition interlock device on Troon's vehicle would be required; and Troon would serve three and one-half years of imprisonment consisting of eighteen months of initial confinement and two years of extended supervision. When the court inquired whether the proposed imprisonment sentence was concurrent or consecutive, defense counsel responded, "Concurrent." When asked by the court if defense counsel correctly stated the terms of the plea agreement, the substitute prosecutor indicated that he would rely on defense counsel's representation that the imprisonment sentence was concurrent and check back with the assigned prosecutor regarding any issues "that would have to bring it back, but I assume that was agreed to."

¶4 The substitute prosecutor did dispute the two-year extended supervision term, stating that he understood the agreed upon term to be three years. Troon agreed with the three-year extended supervision term as part of the parties' joint sentencing recommendation. The circuit court proceeded to engage in a proper plea colloquy with Troon, which included reviewing Troon's plea questionnaire, determining that a factual basis existed for Troon's plea, and determining that Troon knowingly, voluntarily, and intelligently entered his plea. The court accepted Troon's guilty plea, found him guilty of OWI-5th, and dismissed and read in for sentencing purposes the three other charges.[1]

---

[1] Like the circuit court in *State v. Comstock*, 168 Wis. 2d 915, 929-30, 485 N.W.2d 354 (1992), upon accepting Troon's guilty plea, the court did not expressly order that a judgment of conviction be entered against him. Neither party identifies this as an issue on appeal. Given that jeopardy attaches when a court accepts an accused's plea of guilty, we deem any omission in not verbally ordering that a judgment of conviction be entered not relevant for purposes of this appeal. *Id.* at 947.

¶5     At sentencing, the circuit court adopted the parties' joint sentencing recommendation and ordered that Troon's imprisonment sentence run concurrent to any imprisonment sentence Troon was then serving.[2]

¶6     Several days after the plea and sentencing hearing, the assigned prosecutor filed a letter with the circuit court that asserted that the parties had never discussed, nor agreed, that Troon's imprisonment sentence would be served concurrently.  The assigned prosecutor requested that the court hold a hearing to address the issue.

¶7     In May 2022, the circuit court held the requested hearing (the "May 2022 hearing").  The assigned prosecutor asserted that: the settlement offer he extended to defense counsel was silent on the consecutive or concurrent nature of the imprisonment sentence; he had no knowledge that Troon was serving a revocation prison sentence at the time of the offer; it was not the policy of his office, nor his intent, to extend a settlement offer with a concurrent imprisonment sentence on an OWI-5th conviction; there was no "meeting of the minds" on an agreement for concurrent time; and, in the face of a dispute, "[i]t would have been my intention to argue for consecutive time."

¶8     Defense counsel responded to the assigned prosecutor's statements as follows: the assigned prosecutor and Troon had previously jointly

---

[2] At the time of the State's first plea offer and when the first plea was entered and accepted by the court, Troon was serving an imprisonment sentence related to the revocation of the extended supervision portion of his conviction for operating while intoxicated as a fourth offense.  Defense counsel asserted that Troon had been incarcerated and appeared by Zoom when the assigned prosecutor and defense counsel had scheduled the first plea and sentencing hearing with the court.

4

recommended an imprisonment sentence in Troon's OWI-4th case concurrent to another revocation sentence;[3] in other plea negotiations, the assigned prosecutor had specified in the plea offer when the proposed sentence was consecutive to other sentences; Troon was incarcerated during a prior hearing in this case when the plea and sentencing hearing date was set and all parties, including the assigned prosecutor, were present; and though the circuit court had inherent powers to conduct a resentencing, defense counsel was unclear about the procedural grounds for relief sought by the State. Defense counsel further argued that pursuant to *State v. Bowers*, 2005 WI App 72, ¶16, 280 Wis. 2d 534, 696 N.W.2d 255, it would not be a breach of the plea agreement for the State to argue for consecutive time when the plea agreement itself was silent on the issue. The court took the matter under advisement.

¶9    In July 2022, the circuit court held another hearing on the matter (the "July 2022 hearing"). The court concluded that the concurrent or consecutive nature of the jointly recommended imprisonment sentence "is an extremely important part of a plea" and that there was no "meeting of the minds" on the issue between the parties. As a result, the court vacated Troon's plea and judgment of conviction and scheduled the case for further proceedings.

¶10    A second plea and sentencing hearing occurred in February 2023. The parties reached a similar plea agreement as previously presented, and Troon pled guilty to OWI-5th and the remaining charges were dismissed and read in for sentencing purposes. The parties jointly recommended that the circuit court impose the same penalties as presented in the first plea and sentencing hearing,

---

[3] *See State v. Troon*, Rock County Case No. 2015CF1135.

and recommended that Troon serve eighteen months of initial confinement. However, the State argued that the imprisonment term be served consecutively, and that Troon serve three years of extended supervision. Troon argued that the imprisonment term be served concurrently, and that he serve two years of extended supervision.

¶11     The circuit court reviewed the same plea questionnaire with Troon that he had previously submitted for the first plea hearing, conducted a plea colloquy, accepted Troon's guilty plea, and entered a judgment of conviction on the OWI-5th charge. The other charges were dismissed and read in for sentencing purposes. The court adopted the jointly recommended penalties and ordered a concurrent four-year imprisonment term, consisting of two years of initial confinement and two years of extended supervision.

¶12     Troon moved for postconviction relief, arguing that the circuit court violated his right to be free from double jeopardy under the federal and state constitutions when it sua sponte vacated his guilty plea and judgment of conviction and reinstated the original charges. *See* U.S. CONST. amend. V; WIS. CONST. art. 1, § 8(1). Troon requested that the court vacate the second plea and judgment of conviction, reinstate his first plea and judgment of conviction, and grant a resentencing with the benefit of what he asserted was the original joint sentencing agreement to which the State agreed—eighteen months of initial confinement and three years of extended supervision to run concurrent to any sentence that Troon was then serving.

¶13     In January 2024, the circuit court held a hearing on Troon's postconviction motion (the "postconviction hearing"). The court denied the motion. The court determined that it had not sua sponte vacated Troon's first

guilty plea because the parties understood that when they reconvened with the court to address the assigned prosecutor's letter, they were going to be addressing the validity of Troon's plea. The court concluded that its decision to vacate Troon's plea was proper because defense counsel breached the parties' agreement by withholding material information that the joint sentencing recommendation was silent on whether the imprisonment term was concurrent or consecutive.

¶14 Troon appeals.

## DISCUSSION

¶15 We identify the issue before us as whether the circuit court violated Troon's right to be free from double jeopardy when it vacated Troon's first plea and judgment of conviction entered in April 2022. The result of this vacatur was the reinstatement of not just the charge to which Troon had pled guilty but the reinstatement of the three other charges that were dismissed and read in for sentencing purposes. We conclude that the court sua sponte vacated Troon's first plea contrary to *State v. Comstock*, 168 Wis. 2d 915, 953, 485 N.W.2d 354 (1992), thereby violating Troon's right to be free from double jeopardy. Accordingly, we vacate Troon's second plea and judgment of conviction, reinstate his first plea and judgment of conviction, and remand with directions for further proceedings.

### I. Standard of Review

¶16 The double jeopardy clauses of the United States and the Wisconsin constitutions protect criminal defendants, in pertinent part, against a second prosecution for the same offense after conviction and from "repeated attempts" by the government, "with all its power and resources," "to convict [a defendant] of an

alleged offense." ***Green v. United States***, 355 U.S. 184, 187 (1957); *see also* U.S. CONST. amend. V ("nor shall any person be subject for the same offen[s]e to be twice put in jeopardy of life or limb"); WIS. CONST. art I, § 8(1) ("no person for the same offense may be put twice in jeopardy of punishment"); ***State v. Lettice***, 221 Wis. 2d 69, 79, 585 N.W.2d 171 (Ct. App. 1998) (The Wisconsin Constitution provides the same protection against double jeopardy as the United States Constitution.). Accordingly, once a valid plea has been accepted by the circuit court, protection "against a second prosecution for the same offense after conviction" attaches. ***Comstock***, 168 Wis. 2d at 936-37. This protection also extends to dismissed charges pursuant to a plea agreement. ***Id.*** at 950.

¶17 In ***Comstock***, our supreme court exercised its superintending authority and directed circuit courts to:

> refrain from *sua sponte* vacating a guilty or no contest plea after the circuit court validly accepted the plea by assuring itself of the voluntariness of the plea and the factual basis for the charges unless the circuit court finds that there was fraud in procuring the plea or that a party intentionally withheld from the circuit court material information which would have induced the circuit court not to accept the plea.

***Id.*** at 952-53. As indicated, the ***Comstock*** rule provides that there are exceptions under which a circuit court may sua sponte vacate a plea without violating the defendant's right to be free from double jeopardy, including, as the State argues here, when a party intentionally withholds material information from a court which would have induced the court to decline to accept a plea.

¶18 Whether a defendant's right to be free from double jeopardy has been violated is a question of law that we review de novo. ***State v. Trawitzki***, 2001 WI 77, ¶19, 244 Wis. 2d 523, 628 N.W.2d 801; ***State v. Anderson***, 219 Wis. 2d 739, 746, 580 N.W.2d 329 (1998). Factual findings made by the circuit

8

court that are pertinent to the analysis are upheld unless clearly erroneous. *State v. Hill*, 2000 WI App 259, ¶12, 240 Wis. 2d 1, 622 N.W.2d 34.

¶19   To begin, there is no dispute that Troon's first guilty plea was validly entered and properly accepted by the circuit court. Namely, the court conducted a proper plea colloquy, determined that a factual basis existed for Troon's plea, concluded that Troon's plea was made knowingly, voluntarily, and intelligently, and expressly accepted Troon's plea. Thereafter, the court found Troon guilty of OWI-5th and dismissed and read in for sentencing purposes the remaining felony count and the two misdemeanor counts. At the postconviction hearing, the court specifically acknowledged that Troon's plea was validly entered and accepted by the court, which neither party disputed nor argues otherwise here.

¶20   Troon argues that pursuant to *Comstock*, jeopardy attached upon the circuit court's acceptance of Troon's first guilty plea and his right to be free from double jeopardy was violated because the court sua sponte vacated his first guilty plea and no *Comstock* exception applies. The State argues that *Comstock* is inapplicable because the court did not sua sponte vacate Troon's plea. In the alternative, the State argues that the court properly sua sponte vacated Troon's plea under *Comstock* because defense counsel intentionally withheld material information from the court which would have induced the court not to accept the plea.

¶21   In sum, we must determine here: (1) whether the circuit court sua sponte vacated Troon's plea; and, if so, (2) whether a *Comstock* exception applies, such that Troon's right to be from double jeopardy was not violated. For the reasons that follow, we conclude that the court sua sponte vacated Troon's first

guilty plea and that no *Comstock* exception applies, such that Troon's right to be free from double jeopardy was violated.

¶22    Accordingly, we reverse.

**II.  The circuit court sua sponte vacated Troon's plea.**

¶23    As noted, a circuit court's sua sponte vacatur of a defendant's validly entered and accepted plea is permitted under *Comstock* only if, as pertinent here, a party intentionally withholds from the court material information which would have induced the court not to accept the plea.  Therefore, we first examine whether the court sua sponte vacated Troon's first plea.  For the reasons that follow, we conclude that the court did act sua sponte in vacating Troon's first plea.

¶24    To begin, a circuit court acts sua sponte when it acts "'on its own motion,'" rather than "in response to a request by the parties."  *Wisconsin Voter All. v. Reynolds*, 2023 WI App 66, ¶15 n.4, 410 Wis. 2d 335, 1 N.W.3d 748 (citation omitted).  Here, a review of the record indicates that there was no request by the State, in its letter, by motion, or in its oral argument at either the May or July 2022 hearings, for the court to vacate Troon's plea.

¶25    The April 2022 letter that the assigned prosecutor sent to the circuit court following Troon's plea and sentencing states, in pertinent part:

> When I returned to the office today, I learned that [substitute prosecutor] appeared and [defense counsel] informed that we agreed to the sentence for this Operating While Intoxicated 5th offense to run concurrently to the Defendant's previous sentence. We never discussed that. I never agreed to that. I cannot recall ever agreeing to an Operating While Intoxicated 5th offense to run concurrently with any sentence.
>
> Due to the incorrect information that [defense counsel] gave to both [substitute prosecutor] and the Court,

10

> *we did not have a meeting of the minds on this sentence. I request that the court hold a hearing so that we can address this.* Per my notes, it appears that the Court had put on the record that this can be addressed. (Emphasis added.)

The State did not submit a motion or other filing to the court on this issue.

¶26 As indicated, the letter raises an issue only with Troon's sentence. There is no request in the letter that Troon's plea should or needed to be vacated for the circuit court to address the sentencing issue. Rather, the sole concern raised by the State pertains to the representation by Troon's counsel that the jointly recommended imprisonment sentence was to be served concurrently to any other imprisonment sentence. The letter requests that the court hold a hearing so that "this" can be addressed, which we interpret as referring to the concurrent nature of Troon's sentence. The court eventually recognized as much during the postconviction hearing when the court stated, "I'm looking at [the assigned prosecutor's] letter, and maybe I did jump it by vacating … because [the assigned prosecutor] asked for the sentence being issued to be resolved." We agree.

¶27 The transcripts of the May and July 2022 hearings that resulted from the assigned prosecutor's letter also reveal that the State did not argue that the plea itself was invalid due to the dispute about the concurrent nature of Troon's imprisonment sentence. For example, the assigned prosecutor told the circuit court during the May 2022 hearing that had he been present when the nature of the imprisonment sentence arose, "[i]t would have been my intention to argue for consecutive time." When the court summarized the assigned prosecutor's argument by stating that "what I'm hearing you say [assigned prosecutor], is … that … I should reopen the case because we didn't have a meeting of the mind[s] in terms of a plea," the assigned prosecutor clarified "[s]pecifically on the …

*sentencing aspect* of it" and that "I have no problem resentencing this."[4] (Emphasis added.) At the July 2022 hearing, the assigned prosecutor summarized the dispute between the parties as whether Troon's sentence should be concurrent or consecutive or "whether we should resentence." The assigned prosecutor's statements underscore that the State was not requesting that Troon's first plea be vacated but that the court address the sentencing issue.

¶28 The statements by the circuit court at the July 2022 and postconviction hearings further support our conclusion. The court recognized that had defense counsel indicated that the parties had not discussed the concurrent or consecutive nature of the jointly recommended imprisonment sentence, the substitute prosecutor could have asked: to adjourn the plea and sentencing hearing so that the assigned prosecutor could address the issue when he returned to the office; to adjourn the sentencing portion of the hearing; or for each party to argue their respective positions, which the court suspected would have been the likely outcome. None of these options necessitated or provided a sufficient legal basis for the court to sua sponte vacate Troon's validly offered and accepted plea.

---

[4] In only one instance during the May and July 2022 hearings did the assigned prosecutor suggest that Troon's plea may have been inappropriate. In the May 2022 hearing, following the circuit court's comments that it needed to figure out the procedural posture of the case and whether "we're going to just reopen it," the assigned prosecutor responded: "[I]t sounds to me like there was never a meeting of the mind[s]; therefore, there was never an … appropriate sentencing and apparently … possibly an appropriate plea." Based on the context, we construe the comment by the assigned prosecutor about the appropriateness of Troon's plea as reflecting the court's prior comments about "reopening it," rather than as an argument advanced by the State.

¶29 The State argues, on multiple grounds, that the circuit court did not sua sponte vacate Troon's first plea. We address, and reject, each argument in turn.

¶30 First, the State represents that "[t]he [substitute] prosecutor told the court at the plea hearing that it might need to revisit the plea if defense counsel's representation that the parties had agreed to jointly recommend a concurrent sentence was incorrect." This is inaccurate. The plea hearing transcript reveals that the substitute prosecutor never mentioned having to revisit Troon's plea in his comments to the court. The entirety of the substitute prosecutor's statement on the issue at the first plea hearing was as follows:

> Judge, this is [assigned prosecutor's] case and he did not specify concurrent or consecutive, but if [defense counsel] is positive it's concurrent, then I will rely on that and I will just refer back to [assigned prosecutor] to confirm when he gets back from vacation if there's any issues that would have to bring it back, but I assume that was agreed to.

As indicated, the substitute prosecutor raised the issue of the concurrent nature of the jointly recommended imprisonment sentence only, which he stated he would confirm with the assigned prosecutor. There is no mention of Troon's plea, nor any request that the court delay accepting Troon's plea or condition the acceptance of Troon's plea on such confirmation.

¶31 Second, in support of its argument that no sua sponte vacatur occurred, the State refers to the assigned prosecutor's April 2022 letter to the circuit court that "we did not have a meeting of the minds on this sentence. I request that the court hold a hearing so that we can address this. Per my notes, it appears that the Court had put on the record that this can be addressed." The State appears to argue that the letter represented a request for the court to vacate Troon's

plea on some unarticulated basis, and that the court correctly concluded that the letter form of the request, as opposed to an actual motion, was sufficient to move the court to do so. The State also suggests that the court had indicated on the record that Troon's plea could be revisited. We are unpersuaded.

¶32 Although we agree with the State that a circuit court may exercise its discretion in considering a letter request as a motion, that argument misses the mark here because the State never made a request, in any form, that the court vacate Troon's plea. There is nothing in the assigned prosecutor's letter that could be reasonably construed as a request for the court to vacate Troon's validly entered and accepted plea.

¶33 Moreover, to the extent that the State intends to argue that the circuit court had agreed to revisit Troon's plea pending the substitute prosecutor's verification of the joint sentencing recommendation, this suggestion is not supported by the record. The plea hearing transcript reveals that the court did not respond to the substitute prosecutor's comments in any manner. Specifically, the court did not verbally agree to the substitute prosecutor's suggestion, condition the acceptance of Troon's plea on this ground, or indicate that a later dispute regarding the jointly recommended imprisonment sentence might be the basis for vacating Troon's validly entered and accepted plea. To the extent that the court found that it had imposed such a condition in accepting Troon's plea as the court stated in its written order vacating Troon's plea and conviction, such a finding is clearly erroneous and contrary to the record.

¶34 The State additionally fails to cite any supportive legal authority for the proposition that a circuit court may conditionally accept a valid plea, pending the State's later confirmation of the terms of a joint sentencing recommendation,

14

to which it had ultimately agreed at the plea and sentencing hearing. To be sure, the court's frustration about defense counsel's apparent lack of candor in not explicitly telling the court about the silence of the joint sentencing recommendation on the concurrent or consecutive nature of the imprisonment term is understandable. However, the substitute prosecutor acknowledged and stated to the court that the plea offer did not specify the concurrent or consecutive nature of the joint sentencing recommendation. "The staff of the prosecution is a unit and each member must be presumed to know the commitments made by any other member." *Santobello v. New York*, 404 U.S. 257, 263 (1971) (Douglas, J., concurring). The substitute prosecutor's acknowledgement that he lacked information about the concurrent nature of the joint sentencing recommendation does not excuse his subsequent agreement and acquiescence to that term. Allowing a conditional acceptance of a valid plea under these facts would crash headlong into principles of fairness and finality which underlie double jeopardy constitutional protections. *Comstock*, 168 Wis. 2d at 936-37.

¶35 The State next alleges that Troon fails to show that the circuit court erred in its finding that it did not sua sponte vacate Troon's plea. Although there is no such explicit finding by the court, the State interprets the court's following statement as such a finding: "[W]hen we came back, we all knew what we were going to be talking about. We were going to be talking about whether or not it was a valid plea based upon what occurred at the [initial] hearing." To the extent that this statement can be considered an implicit finding by the court that it did not act sua sponte, we reject it as contrary to the facts in the record, none of which would cause a court to reasonably conclude that the parties understood that Troon's plea was potentially invalid because of the State's concern with the concurrent nature of Troon's imprisonment sentence.

15

¶36 As noted, the assigned prosecutor failed to raise an issue with Troon's plea in its letter to the circuit court or in the May or July 2022 hearings. The May 2022 hearing transcript reveals that when the parties reconvened with the court following the assigned prosecutor's letter, defense counsel repeatedly stated that he was unsure about the procedural posture of the case. This confusion was shared by the court, which adjourned the hearing to determine the procedural posture of the case and whether "we're going to just reopen it." As a result, any determination by the court that it had not acted sua sponte in vacating Troon's plea because the parties knew that they had reconvened for this very purpose is contradicted by the record and clearly erroneous.

¶37 In sum on this issue, the record indicates that the circuit court sua sponte vacated Troon's first plea. To the extent that the court explicitly or implicitly made findings of facts to support a contrary determination, such findings are clearly erroneous.

### III. No *Comstock* exception applies.

¶38 Having concluded that the circuit court sua sponte vacated Troon's first plea, we now examine whether a **Comstock** exception applies. The parties agree that the **Comstock** exception pertinent here is whether defense counsel "intentionally withheld from the circuit court material information which would have induced the court not to accept [Troon's first] plea." **Comstock**, 168 Wis. 2d at 953. For the following reasons, we conclude that, as a matter of law, this exception does not apply here.

¶39 In response to shifting arguments by the parties throughout these proceedings, the circuit court provided various grounds for its vacatur decision, but none suffice to satisfy the pertinent **Comstock** exception. At the May 2022

16

hearing, the assigned prosecutor argued that there was not "a meeting of the minds" between the State and defense counsel regarding the concurrent or consecutive nature of the joint sentencing recommendation. At the July 2022 hearing, the court concluded that because there was no meeting of the minds, "what I need to do at this point is vacate the judgment." However, a lack of a "meeting of the minds" between the parties is not a *Comstock* exception justifying a court's sua sponte vacatur of a properly offered and accepted plea. The State cites no authority that permits a court to avoid *Comstock*'s directive on this ground.

¶40 A misapplication of the pertinent *Comstock* exception continued to pervade the postconviction hearing. The circuit court stated that "the vacating of the plea was appropriate because of the fact that I found that there was that material breach of the agreement by that intentionally withholding that information" and that "concurrent versus consecutive" is "a material issue." A party's material breach of the plea agreement is not a *Comstock* exception and cannot be relied upon to support the court's sua sponte vacatur of Troon's plea once it was validly offered and accepted. Further, as noted by postconviction counsel, the State never brought a motion to vacate the plea agreement on any ground nor argued that Troon materially breached the plea agreement.

¶41 In response to further argument from the parties at the postconviction hearing, the circuit court offered another ground for its vacatur decision. At the conclusion of the hearing, postconviction counsel asked the court how the dispute about the concurrent nature of Troon's sentence undermined the validity of Troon's plea. The court directed the question to the assigned

17

prosecutor, who stated that Troon "wouldn't have gotten the other matters dismissed and read in."[5] The court then stated, "Yeah. Since the State may not have offered what the State offered, the State may have done something different." Yet, the *Comstock* exception at the center of our discussion does not relate to the *State's* response when a party has intentionally withheld material information, but to the *circuit court's* response. In other words, the pertinent *Comstock* exception concerns whether the withholding from *the court* of the material information would have induced *the court* not to accept the plea, not whether the State would have offered the plea agreement in the first place.

¶42    Even if we could square the circuit court's conclusions within the contours of the applicable *Comstock* exception, we fail to see how the absence of an agreement about the consecutive or concurrent nature of Troon's imprisonment sentence was material to the validity of Troon's plea. We are persuaded by the language in *Comstock*, 168 Wis. 2d at 953, and by our reasoning in prior cases that in order to meet the pertinent *Comstock* exception here—whether "a party intentionally withheld from the circuit court material information which would have induced the circuit court not to accept the plea"—the material information withheld "must be information that would have affected the plea's validity in the

---

[5] One reasonable interpretation of this response from the State is that Troon's insistence on a concurrent imprisonment term would not have resulted in a plea agreement and the dismissal of the charges that were dismissed and read in. But this assertion is undermined by the second plea agreement reached between the parties, in which Troon similarly pled guilty to the OWI-5th offense and the other charges were dismissed and read in for sentencing purposes. In the second instance, the consecutive or concurrent nature of the imprisonment term and the length of extended supervision was left for argument. Hence, the disagreement about the concurrent versus consecutive nature of the jointly recommended imprisonment sentence did not hinder the State from offering the same plea agreement or Troon from accepting it, albeit with a slightly different joint sentencing recommendation for two aspects of the sentence being argued by the parties.

first instance." ***State v. Richer***, No. 2019AP2024, unpublished slip op., ¶33, (WI App May 18, 2021);[6] *see also* ***Comstock***, 168 Wis. 2d at 951 (the circuit court erred when it "vacated its own order accepting the pleas and dismissing the felony counts and reinstated the felony charges … without any showing that the acceptance of the guilty plea was erroneous on grounds of involuntariness or lack of a factual basis").  In other words, the material information withheld from the court must be of the nature to undermine the validity of the plea, such as the insufficiency of the plea colloquy, the lack of a factual basis for the plea, or that the plea was not entered knowingly, voluntarily, and intelligently.  ***Comstock***, 168 Wis. 2d at 951.  Neither the State's possible rethinking of its plea offer in the first instance or the disagreement about the precise structure of the recommended imprisonment sentence undermined the validity of Troon's plea because neither rendered the court's plea colloquy deficient, nor undermined the factual basis or voluntariness of Troon's plea.

¶43     The State argues that the record establishes that the circuit court would not have accepted Troon's plea had it known that there was no agreement on the concurrent or consecutive nature of the joint sentencing recommendation. The State fails to identify any such explicit statement in the record.  Instead, in support of such a conclusion, the State points to two statements made by the court during the July 2022 hearing that: (1) had defense counsel represented that there was no explicit agreement on this issue, the substitute prosecutor may have stated that the State could not "go to plea and sentencing"; and (2) there was no "meeting of the minds" on the issue of the concurrent nature of the jointly recommended

---

[6] We cite this authored, unpublished opinion for its persuasive value only pursuant to WIS. STAT. RULE 809.23(3)(b) (2023-24).

imprisonment sentence. However, as stated, neither the hypothetical impact on the State's willingness to proceed with the hearing nor the court's determination that there was no "meeting of the minds" is of consequence under *Comstock* because neither meets the pertinent exception. Rather, as stated, the intentional withholding of material information must be such that it would have induced *the court* not to accept the plea. Such a conclusion was never explicitly reached by the court. To the extent the State means to argue that such a conclusion was implied by the court, it is not sufficiently supported by the facts of record.

**CONCLUSION**

¶44 For the foregoing reasons, we reverse the judgment of conviction and the order denying Troon's postconviction motion. We order that Troon's April 14, 2022 plea and judgment of conviction be reinstated. Neither party disputes that on remand, Troon should be resentenced. However, we reject Troon's position that he is entitled to the benefit of the first joint sentencing recommendation with a concurrent imprisonment term because it is undisputed that the State never explicitly agreed to such a term. Therefore, we conclude that on remand, unless another agreement is reached between the parties, they shall offer the same portions of the first joint sentencing recommendation to which they both agreed. At resentencing, the concurrent or consecutive nature of the imprisonment term may be argued or further negotiated between the parties.

All sentence credit shall be calculated from the date of Troon's April 14, 2022 plea and judgment of conviction. The court may conduct such other proceedings as are necessary, consistent with this opinion.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

Not recommended for publication in the official reports.